THOMAS KNOBLOCH

*v.*

SOLOMON MUELLER.

*Filed at Mt. Vernon January 20, 1888.*

1. CHANCERY—*bill of review—upon what grounds it will lie—and of a bill as to newly discovered matters.* The two grounds upon which a bill of review, or bill in the nature of a bill of review, will lie, are errors of law appearing on the face of the decree without further examination of facts, and new fact or facts discovered since the decree, which are material, and which it was impossible for the party to produce at the time the decree passed.

2. Bills containing newly discovered matter are in the nature of original bills, in so far as such new matter presents an issuable fact, and therefore admitting an answer and the formation of an issue; but only so far as it relates to the truth and sufficiency of the alleged new matter, and its admissibility, for the purpose of affecting and opening the original decree. The purpose of a bill of this character is to procure a reversal, alteration or explanation of the former decree.

3. SAME—*requisites of a bill of review—the prayer.* A bill of review should state the former bill, the proceedings thereon, and the decree rendered by the court, the grievance, under the decree, of the party presenting the bill, and the error of law or new matter discovered upon which it is sought to reverse, re-open or impeach it. If the former decree has not been carried into execution, the prayer may simply be that the same may be reversed and set aside; if the former decree has been executed, that the decree be reversed, and the complainant be restored to his former condition or *status.* In bills in the nature of bills of review, instead of praying for the reversal of the former decree the prayer should be that the cause be reheard, in respect to and considering the new matter, at the same time it is reheard upon the original bill, etc.

4. SAME—*decree by consent—whether it may be reviewed.* A decree entered by consent can not be reversed, set aside or impeached by bill of review, or bill in the nature of a bill of review, except for fraud, unless it be shown that the consent was not in fact given, or something was inserted as by consent that was not consented to.

5. SAME—*relief against admissions in ignorance of facts.* While it is true that as between the parties and those chargeable with notice, courts of equity will entertain jurisdiction and grant relief, on proper bill filed, from the injurious effects of admissions and confessions of material facts, made in the course of judicial proceedings, in ignorance of the rights of

the party making them, when he has been guilty of no negligence, either in the discovery of the fact or in applying to the proper forum for relief, yet such relief can only be granted upon such grounds and for such reasons as would authorize the court to set aside agreements or contracts entered into by the parties.

6. SAME—*as to one who has purchased on the faith of a decree of court—how far protected.* A party died seized of lands, leaving what purported to be a will, but which was, by decree of the court, set aside. There were two sons and two daughters, who supposed they were the owners, each of an undivided fourth. One of the sons died, having devised what was supposed to be his part of the estate to his brother. On bill for partition, by one of the daughters, a decree was entered by consent, finding the surviving brother entitled to one-half of the father's lands, and the two sisters each one-fourth. Before partition, the brother bought the interest of one sister, and the decree was modified, giving him three-fourths and the other sister one-fourth, and a partition was made accordingly, and reported, to which report exceptions were filed. Afterward, the sister sold and conveyed, by warranty deed, the undivided one-fourth of the lands for its full value, and the purchase money was all paid, and the exceptions to the report of the commissioners were overruled, and no appeal was taken from the decree approving the partition. About two years after this decree, a prior will of the father was found and probated, which gave all his lands to his two sons. The surviving son then filed his bill setting up the facts, seeking to set aside his sister's deed as a cloud on his title, but not asking to have the decree set aside: *Held,* that as the purchaser from the sister had no notice of the defect of the title and had bought on the faith of the decree, the bill would not lie to divest him of his title, as his equity was equal to that of the complainant.

7. In cases of this sort, no relief will be granted, in equity, injuriously affecting intervening rights acquired in good faith after the rendition of a judgment or decree, and in reliance thereon. Or, as the rule has been differently formulated: where there are circumstances which give rise to an equity, as distinguished from an equitable estate,—as, for example, an equity to set aside a deed for fraud, or to correct it for mistake,—and the purchaser under the instrument maintains the plea of purchase for valuable consideration without notice, the court will not interfere.

8. DECREE—*its conclusiveness.* Decrees of courts of chancery in respect of matters within their jurisdiction, are as binding and conclusive upon the parties and their privies as are judgments at law. And a decree by consent, in an amicable suit, has been held to have an additional claim to be considered final.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

George Christian Mueller died March 27, 1870. By his will, dated March 14, 1870, his real estate was devised to his sons, George and Solomon Mueller. The will was admitted to probate, but afterwards, at the January term, 1871, in the circuit court of St. Clair county, this instrument was, on bill filed for that purpose, set aside, and declared not to be the will of said deceased. This decree was affirmed by this court. *Mueller* v. *Rebhan, 94* Ill. 142.

On the 27th day of March, 1879, Catharine Rebhan, one of the heirs-at-law of said George C. Mueller, deceased, filed in the circuit court of St. Clair county her bill for partition of the west half north-west, and the north-east north-west quarter of section 28, township 1 north, range 7 west, alleging the death of said George C. Mueller intestate; that at his death he left him surviving George Mueller and Solomon Mueller, Margarite Reinhardt and complainant Catharine Rebhan, his children and only heirs-at-law, to whom descended, in equal parts, the said lands; that on the death of said ancestor, George and Solomon had taken possession of the land jointly, and received the rents thereof until February 29, 1875, when George died, leaving all his property to Solomon, by his will duly probated, etc., since when said Solomon has received the rents and profits of said land. The bill alleged that Solomon was the owner in fee of the undivided one-half of said lands, and the complainant and Mrs. Reinhardt were each the owner in fee of the undivided one-fourth part thereof, as tenants in common, and pray for partition of the land, and that Solomon be required to account for the rents and profits, etc. At the February term, 1880, of said court, said bill was taken as confessed as to Mrs. Reinhardt, and Solomon Mueller, and his wife, who was also made a party, filed their answer, admitting the material allegations of the bill, and consenting to partition of said premises according to the prayer thereof. Subsequently, an amended answer and cross-bill were filed, setting up that said Solomon had made lasting and valuable improvements on the

land, etc.  On hearing, said defendant Solomon admitted, in open court, the allegations of the bill in respect of the interest of the parties as tenants in common, the death and intestacy of the ancestor, and consented to a decree of partition, and a decree declaring the several interests of the parties, as set up in the bill, as heirs-at-law of said George C. Mueller, deceased, in and to said land, was entered by the court by consent, and commissioners were appointed to make partition accordingly.

At the May term, 1880, of said court, on proof that defendant Solomon had purchased the interest of his co-defendant, Margarite Reinhardt, the decree was, on his motion, so changed as to require the commissioners theretofore appointed, to set off to the said Solomon three-fourths, and to the complainant one-fourth, of said land.  The issue as to rents and profits and improvements was referred to the master for proofs.  At the same term the commissioners filed their report, setting off to the complainant, Mrs. Rebhan, as and for her one-fourth interest in said land, lot 10, as shown in their report, containing forty-eight acres of the land, and set off the residue of said tracts of land to the said Solomon.  Exceptions to the report were filed, which were, at the May term, 1881, overruled by the court, and the report approved by decree duly entered. No writ of error was prosecuted or appeal taken from the decree of partition.

At the February term, 1883, of said court, on hearing of the issues as to rents and profits, a decree was rendered in favor of complainant Rebhan, for $1638.97, from which an appeal was prosecuted to the Appellate Court.  On the 8th day of March, 1881, in consideration of $5050, Mrs. Rebhan, and Emil, her husband, by their warranty deed, conveyed the undivided one-fourth part of the premises of which her father died seized, and all their right, title and interest in the whole of said land, to appellant, Thomas Knobloch, reserving, however, her rights to rents and profits theretofore accrued.  This deed was filed for record March 10, 1881.  At the February

term, 1882, appellant brought an action of trespass against said Solomon for alleged trespasses upon said forty-eight acres of land set off to Mrs. Rebhan, and afterwards brought ejectment to recover the same.

In March or April, 1883, appellee found a paper dated March 9, 1855, purporting to be the last will and testament of George Christian Mueller, deceased, in and by which the testator devised all his land to his two sons, George and Solomon, subject to the payment of $1500 to Catharine Rebhan. This will was duly admitted to probate. On July 6, 1883, Solomon Mueller, appellee here, filed in the St. Clair circuit court the present bill against appellant, Catharine Rebhan, Emil Rebhan, Margarite Reinhardt, and Edward Abend, who, prior to the probate of the last will, had been appointed administrator of the estate of said George C. Mueller, deceased, substantially setting up the foregoing facts, and praying that said will (1855) stand as the last will and testament of the said George Christian Mueller; that the deed from Catharine and Emil Rebhan to said Knobloch be set aside, as being a cloud upon complainant's title; that all proceedings in partition regarding said land, and the stating of an account of rents and profits, now pending in the Appellate Court, and all actions commenced by said Edward Abend, as aforesaid, and by said Knobloch, be no further prosecuted, and that the defendants, their attorneys, agents, etc., be perpetually enjoined from taking any further steps in regard to said actions. An injunction was granted as prayed in the bill.

Appellant answered, setting up that he had purchased in good faith, and paid $5050 for the interest of Mrs. Rebhan in said land, without any notice of any adverse claim or title, and also setting up that complainant, Solomon, is estopped by the decree of partition, rendered by his consent in open court, from disputing complainant's title. At the September term, 1885, of said circuit court, a decree was entered perpetually enjoining the prosecution of said suits, and setting aside the deed

from Mrs. Rebhan and her husband to appellant, as a cloud on complainant's title. From this decree appellant, Knobloch, alone appealed.

Mr. W. C. KUEFFNER, and Mr. JAMES M. DILL, for the appellant:

A decree becomes final at the expiration of the term at which it was rendered, and can not afterward be altered or amended, except as to mere matters of form. *Hurd* v. *Goodrich*, 59 Ill. 540.

The amendment of a bill by the introduction of new matter disconnected from the original bill, can not affect any one as *lis pendens* until allowed and filed. It can not relate back to the filing of the original bill. *Bradley* v. *Luce*, 99 Ill. 235; Freeman on Judgments, sec. 199.

A purchaser *pendente lite* is one who purchases before decree, and is bound by the result of the pending case upon the pleadings, as they existed at the time of the purchase. (*Ellis* v. *Sisson*, 96 Ill. 106.) But such a purchaser is not bound by the result of some other suit, nor by an amendment of the same suit, which introduces new matter disconnected with the original bill. Freeman on Judgments, sec. 199.

The rule of notice *lis pendens* does not apply to a purchaser under a decree of foreclosure who is not a party to the record. The law does not require such purchaser to inspect the record, and see that it is free from errors. He only has to see that the court has jurisdiction, and that there is such a judgment or decree, unreversed, as authorizes the sale. *Fergus* v. *Woodworth*, 44 Ill. 374.

A person purchasing land with reference to the filing of a bill by his vendor to foreclose a mortgage given to him by a prior purchaser, buys the same *pendente lite*, and will be affected by a reversal of the decree of foreclosure; but a purchaser from him after decree of foreclosure, and before writ of error is sued out to reverse the decree, will not be affected by

its reversal in the rights acquired by his purchase. *Mulvey* v. *Gibbons,* 87 Ill. 368.

This whole claim,—that the appellant bought *pendente lite,*—has no meaning in this case. The doctrine does not apply. The whole extent of that doctrine is that a purchaser *pendente lite* will hold in subservience to the rights of the parties as finally determined in the pending litigation. *Alwood* v. *Mansfield,* 59 Ill. 496; 2 Bouvier's Law Dic. p. 77, sec. 5, (ed. of 1873,) and authorities there cited.

That the decree of partition was final, see Freeman on Judgments, sec. 30; *Johnson* v. *Everett,* 9 Paige, 638; *Railroad Co.* v. *Bradleys,* 7 Wall. 575; *Myers* v. *Manny,* 63 Ill. 211.

Title acquired under an erroneous judgment is not divested by a reversal. *McJilton* v. *Love,* 13 Ill. 494; *McLagan* v. *Brown,* 11 id. 519; *Goudy* v. *Hall,* 36 id. 319; *Wadhams* v. *Gay,* 73 id. 417; *Feaster* v. *Fleming,* 56 id. 460.

A decree of partition can not be changed, on bill, after the rights of innocent parties have intervened. *DeWitt* v. *Hawkins,* 107 Ill. 112.

A decree by consent can not be set aside on appeal, error or bill of review. *Armstrong* v. *Cooper,* 11 Ill. 540; *Wadhams* v. *Gay,* 73 id. 434.

Where a *bona fide* purchaser, for a valuable consideration, without notice, is concerned, equity will not interfere to grant relief in favor of a party, although he has acted in ignorance of his title upon a mistake of law. Story's Eq. Jur. sec. 139.

In all cases of mistakes in written instruments, courts of equity will interfere only as between the original parties, or those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, judgment creditors, or purchasers from them with notice of the facts. As against *bona fide* purchasers for a valuable consideration without notice, courts of equity will grant no relief, because they have at least an equal equity to the protection of the court. Story's Eq. Jur. sec. 165; *Lickmon*

v. *Wood,* 69 Ill. 329; Pomeroy's Eq. sec. 776; *Milmine* v. *Burnham,* 76 Ill. 362; *Russell* v. *Ranson,* 76 id. 167; *Bent* v. *Coleman,* 89 id. 364.

Messrs. G. & G. A. KOERNER, for the appellee:

A decree is only final when nothing remains to be done but a ministerial duty, and nothing in the cause is left except to see that the decree is properly executed. *Beebe* v. *Russell,* 19 How. 283; *Ellis* v. *Sisson,* 96 Ill. 105; *Bradley* v. *Luce,* 99 id. 235.

That appellant was a purchaser *pendente lite,* see *Gilman* v. *Hamilton,* 16 Ill. 225; *Talbott* v. *Bell's Heirs,* 5 B. Mon. 323; *Clary* v. *Marshall's Heirs,* 4 Dana, 99.

The cases cited by appellant as to the protection of *bona fide* purchasers involve purchases under judicial sales.

The fact of a will could not have been shown or made available on appeal or bill of review. The bill might, however, be called an original bill in the nature of a bill of review. At the final hearing no objection as to the nature of the bill was made, and no exception taken to the decree of the court on that head. That the bill was a proper one, we confine ourselves, as we do not think the point can properly arise on this record, to a reference to a few authorities in regard to cases where all parties acted under a mistake of facts. Adam's Eq. 416, 419, 420, side page 1; Story's Eq. sec. 190; Bispham's Principles of Equity, secs. 190, 191; *White* v. *National Bank,* 64 N. Y. 316; Kerr on Fraud and Mistake, 405, 419, and notes to pages 416, 417.

Even a judgment confessed under a mistake will be set aside during the term, and if it is no longer in the power of the court, (as in this case,) relief may be obtained in chancery. *The Hiram,* 1 Wheat. 410, note, 417; Kerr on Fraud and Mistake, 405, 419, and notes to pages 416, 417.

So, also, a compromise founded on a will which turns out to have been revoked by another will of which the parties are

ignorant, the transaction can not be supported, and the parties will be relieved. Kerr on Fraud and Mistake, 433, 434. See, also, High on Injunctions, secs. 119, 125, 140, 53, 54, 55, 328.

The loss of one conveyance in a claim of title is sufficient to warrant equity in enjoining proceedings at law to get possession of the premises, as well as on the ground of accident, whereby a defence can not be perfectly made at law, as from the necessity of preventing a cloud upon title. *Codgus* v. *Cross*, 3 Chandl. 34.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The bill in this case seeks to remove as a cloud upon the title of appellee, Solomon Mueller, derived under the will of 1855, the deed of Catharine and Emil Rebhan to appellant, and to restrain, by injunction, the prosecution of an action of ejectment brought by appellant to recover the land partitioned to Catharine Rebhan in the proceedings instituted by her for partition of the lands of which her father died seized, and to enjoin a certain trespass suit brought for alleged trespasses upon said land by appellee, and to restrain Mrs. Rebhan from collecting $1638.97, decreed her as rents and profits in said partition proceeding. Mrs. Rebhan not having appealed from the decree against her, the latter branch of the case made by the bill is not before us.

When the instrument dated March 14, 1870, purporting to be the last will and testament of George C. Mueller, who died March 20, 1870, was set aside upon bill filed for that purpose, it was supposed by all the parties in interest that his estate had descended to his heirs-at-law as intestate estate, and letters of administration were granted accordingly. All the parties acquiesced in this condition of affairs, and rested in the belief that the property had so descended, until the discovery, in March or April, 1883,—thirteen years after the death of the ancestor,—of the will of the 9th of March, 1855, by which the estate in question was devised to George and Solomon

Mueller. The good faith of the parties is not questioned. No fraud or misconduct is alleged, or *laches* imputed or imputable to any one, on account of the delay in the production of this will, or in any of the proceedings had in respect to the real or personal estate prior to its discovery. When Catharine Rebhan, daughter and one of the heirs-at-law of said George C. Mueller, deceased, on the 22d day of March, 1879, filed her bill for partition of the real estate of which said George C. had died seized, and when Solomon Mueller filed his answer, admitting the intestacy of his father, and consenting to the partition to Mrs. Rebhan and Mrs. Reinhardt, his sisters, each a one-fourth part or interest in the land of which their common ancestor died seized, and consented to the decree therefor, the several parties, in good faith, believed the facts alleged in her bill to be true, and that the land had descended to the four children of George C. Mueller, deceased, in equal parts, in fee. It is also equally clear that when appellant, Thomas Knobloch, purchased the interest of Catharine Rebhan in said land, and paid her therefor $5050, he did so in good faith, relying upon the title of said Catharine as found and declared by the circuit court of St. Clair county, in said partition proceeding, by the consent of appellee. Upon the production and probate of the will of 1855, in April, 1883, it became manifest that the title to said land had not, in fact, so descended to the heirs-at-law of said George Christian Mueller, but by virtue of that will the legal title thereto, at the death of the testator, vested in the devisees, George and Solomon Mueller, and that by the last will of said George Mueller, who died February 29, 1875, the legal title to the whole of said land became vested in appellee, Solomon Mueller. It is apparent that all of the parties, while acting in good faith, were mistaken, and that the decree of the circuit court finding one-fourth interest of said land in fee in Catharine Rebhan, would not have been entered had the court or parties been aware of the true condition of the title to the land.

It is said by counsel for appellee, that this bill may be maintained, if upon no other ground, as a bill in the nature of a bill of review. This is manifestly a misapprehension. In neither the frame of the bill, nor in the prayer, has the pleader attempted a review of the decree rendered in the partition proceeding of *Rebhan* v. *Mueller et al.* The bill sets out the filing of that bill, the decree of partition, and for rents and profits, but it nowhere seeks to re-open that decree, or reverse, impeach or alter it, or to procure a rehearing of that cause upon the alleged newly discovered matter. The prayer is to remove appellant's title derived thereunder, as a cloud upon appellee's title, and to restrain proceedings under that decree, without re-opening it or setting it aside. The whole scope of the bill is to procure the relief sought, upon the equitable ground of mistake of fact as to the title at the time of the entry of that decree, without in any way interfering with it, but seeks to enjoin proceedings under it.

The two grounds upon which a bill of review, or bill in the nature of a bill of review, will lie, are errors of law appearing on the face of the decree, without further examination of facts; and new fact or facts discovered since the decree, which are material, and which it was impossible for the party to produce at the time the decree passed. (Daniell's Ch. Pr. 1576; 2 Smith's Ch. Pr. 50.) Bills containing newly discovered matter are in the nature of original bills, in so far as such new matter presents an issuable fact, and therefore admitting an answer and formation of an issue; but only so far as it relates to the truth and sufficiency of the alleged new matter, and its admissibility for the purpose of affecting and opening the original decree. (Authorities *supra; Buffington* v. *Harvey,* 95 U. S. 99.) The purpose of the bill of the character named, is to procure a reversal, alteration or explanation of the former decree. The bill should state the former bill, the proceedings thereon, and the decree rendered by the court, the grievance under the decree of the party presenting the bill, and the error

of law or new matter discovered upon which it is sought to reverse, re-open or impeach it. In bills of review, if the former decree has not been carried into execution, the prayer may simply be that the same may be reversed and set aside; if the former decree has been executed, that the decree be reversed, and the complainant be restored to his former condition or *status* as if it had not been rendered. In bills in the nature of bills of review, instead of praying the reversal of the former decree, the prayer should be that the cause be reheard in respect to and considering the new matter, at the same time it is reheard upon the original bill, etc. Daniell's Ch. Pr. 1581, 1582.

The decree of partition, rendered at the February term, 1880, and the subsequent decree approving the report of the commissioner, rendered at the May term, 1881, of said court, remain unreversed, and in full force and effect. The court had jurisdiction of the subject matter and of the parties, and rendered its decree determining the several interests of the complainant Catherine Rebhan and appellee, by the consent of appellee, as appears by his answer filed in said cause, and by the recitals in said decree of partition.

Decrees of courts of chancery, in respect of matters within their jurisdiction, are as binding and conclusive upon the parties and their privies as are judgments at law; and a decree by consent, in an amicable suit, has been held to have an additional claim to be considered final. (*Alleson* v. *Stark*, 9 A. & E. 225.) Decrees so entered by consent can not be reversed, set aside or impeached by bill of review or bill in the nature of a bill of review, except for fraud, unless it be shown that the consent was not, in fact, given, or something was inserted as by consent that was not consented to. Daniell's Ch. Pr. 1576; *Webb* v. *Webb*, 3 Swanst. 658; *Thompson* v. *Maxwell*, 95 U. S. 391; *Armstrong* v. *Cooper*, 11 Ill. 540; *Cronk* v. *Traubbe*, 66 id. 432; *Haas* v. *Chicago Building Society*, 80 id. 248; *Atkinson* v. *Mauks*, 1 Cow. 693; *Winchester* v. *Winchester*, 121 Mass.

127; *Alleson* v. *Stark*, 9 A. & E. 225; *Earl of Hopetown* v. *Pamsey*, 1 Bell's App. Cas. 69. See, also, note to *Duchess of Kingston's case*, 2 Smith's L. C. *826, *et seq.* It is the general doctrine that such a decree is not reversible upon appeal or writ of error, or by bill of review, for error. (*Armstrong* v. *Cooper*, 11 Ill. 540.) No exceptions were taken to the decree of partition, or attempt made in the cause in which it is rendered to vacate or modify it.

It is undoubtedly true, that as between the parties and those chargeable with notice, courts of equity will entertain jurisdiction and grant relief, on proper bill filed, from the injurious effects of admissions and confessions of material facts, made in course of judicial proceedings, in ignorance of the rights of the party making them, where he has been guilty of no negligence, either in the discovery of the fact or in applying to the proper forum for relief; but such relief can only be granted upon such grounds and for such reasons as would authorize the court to set aside agreements or contracts entered into by the parties. *Attorney General* v. *Tomlin*, 7 Ch. Div. (L. R.) 388; *Millspaugh* v. *McBride*, 7 Paige, 509; *Ferroville* v. *Bogle*, 4 Russ. 142; *The Hiram*, 1 Wheat. 440. But it is apparent that the decree in the partition proceedings can only be attacked, reversed, annulled or set aside by direct proceedings in that case, or upon bill of review, or bill in the nature of a bill of review.

If this were not so, however, there is another ground upon which the decree must be reversed. It is the well settled doctrine of this court that no relief will be granted, in equity, in cases of this sort, injuriously affecting intervening rights acquired in good faith after the rendition of a judgment or decree, and in reliance thereon. So it has been held, that amendments may be made in judicial proceedings, but not so as to affect the intervening rights of third persons accruing prior to such amendment. (*Shirley* v. *Phillips et al.* 17 Ill. 473; *Cochran* v. *Gretches*, 18 id. 390; *Seckman* v. *Wood*, 69 id. 33;

1 Story's Eq. Jur. 165.) Relief will not be granted to the pre-
judice of appellant, if he has an equal equity with appellee,
and is equally entitled to the protection of the court. (1 Story's
Eq. Jur. 165.) As already seen, all the parties to the parti-
tion proceedings supposed, in good faith, that Mrs. Rebhan
was the owner in fee of the undivided one-fourth of the lands
of which her father died seized, and that, on the 8th day of
March, 1881, appellant purchased her interest in such lands
for a full and adequate consideration, without notice, actual
or constructive, of any defect in her title, and in good faith.
All the elements to constitute him a *bona fide* purchaser are
present,—that is, a valuable consideration paid, absence of
notice, and presence of good faith. (2 Pomeroy's Eq. 745.)
His grantor had, by a court of competent jurisdiction, in a
proceeding instituted to find and declare her interests in these
lands, been adjudged by the consent and admission of appellee
to be the owner in fee of the undivided one-fourth part thereof,
and there was nothing in the record, or elsewhere, apparent
to disclose that she, who was thus clothed with apparent legal
title, was not the owner in fact of that interest in the land.
Nor is it shown or claimed that further inquiry would then
have disclosed anything to cast suspicion upon her title. The
defence of a *bona fide* purchaser had its rise in equity, upon the
doctrine that a court of equity acts upon the conscience of him
against whom relief is sought, and if he has done no wrong, or
it would be unconscientious or inequitable to grant the relief,
the court will refuse to exercise its jurisdiction. If, in equity
and good conscience, the complainant should not obtain what
he seeks, or the defendant ought not to suffer what is demanded,
then the court will withhold its power. In theory, it is said
the defence of a *bona fide* purchaser presupposes some defect
in the purchaser's title, but the court refuses to investigate
the validity of the title of either party, upon the ground that
good conscience does not dictate that he who has dealt hon-

estly, in good faith, and without notice, should be deprived of the legal right he has thereby gained. 2 Pomeroy's Eq. 739.

There was formerly much apparent conflict in the adjudged cases as to when the defence of a *bona fide* purchaser would be availing. In *Phillips* v. *Phillips,* 4 DeG., F. & J. 208, Lord WESTBURY grouped the cases in which a *bona fide* purchaser will be protected, into three general classes, and reduced the doctrine to a formula, which it is said by Pomeroy, (Eq. Jur. 742,) has been accepted by subsequent judges almost without exception. The doctrine thus formulated, so far as applicable here, is: "Thirdly, when there are circumstances which give rise to an equity, as distinguished from an equitable estate,—as, for example, an equity to set aside a deed for fraud, or to correct it for mistake,—and the purchaser under the instrument maintains the plea of purchase for valuable consideration without notice, the court will not interfere."

Without extended discussion, it is apparent that the bill here filed seeks relief ancillary to the legal estate of appellee. The purpose of the bill is to remove the deed to appellant as a cloud upon appellee's legal title, and to enjoin the assertion of rights by appellant thereunder. The right to the relief sought exists, if at all, upon the equity arising out of the alleged mistake as to the title to said land in the grantor of appellant. This brings the case directly within the rule above given, which is sanctioned by the weight of modern authority, and if appellant made out his defence as *bona fide* purchaser, he should have prevailed in the court below.

The decree of partition, as seen, was rendered by a court of competent jurisdiction, having jurisdiction of the person and of the subject matter, and by appellee's consent. Appellant, without notice, for full value and in perfect good faith, acquired the title sought to be removed as a cloud upon appellee's title from the party found and declared by that decree to be the owner, and we can perceive no principle upon which a

court of conscience can hold that appellant shall lose in consequence of the mutual mistake, rather than appellee.

It can not be said that the equities of appellee are superior to those of appellant in respect of the title thus acquired, and the equities being equal, the court will give no assistance to the legal title, (2 Pomeroy's Eq. Jur. 742, and cases cited,) but will remit the complainant to his remedy at law. It is said, however, that at the time appellant purchased, the report of the commissioners had not been confirmed by the court, and that he purchased subject to having the interest of his grantor, as found by the commissioners, set aside. It is true that exceptions to the report of the commissioners were then pending, but none of the exceptions questioned the right or title of Catharine Rebhan to the undivided one-fourth part of the real estate of which her father died seized. Such exception related simply to the manner of partition, and the conduct of the commissioners in making the same. There was nothing therein to put appellant upon notice or inquiry as to the title of Mrs. Rebhan. He bought subject, as a matter of course, to having the amount set off to Mrs. Rebhan changed or diminished by subsequent action of the commissioners, or to have their report set aside by the court, but his purchase was of her interest in the land, which was conceded by appellee and declared by the court to be a one-fourth interest therein.

It is also said by counsel for appellee, that appellant may rely upon the covenants of warranty in his deed from the Rebhans, and therefore the equities are with appellee. It is not shown whether Mrs. Rebhan and husband, who joined in the execution of said deed, are solvent or insolvent, and we perceive no principle, nor is any suggested by counsel, upon which appellant should be driven to resort to his legal remedy against his grantor for indemnity from loss, especially in view of the fact that it is not shown that such remedy would be availing.

It will not be proper for us to here discuss or determine the right of appellee to the money paid by appellant for the land in question, or as to whether he has any remedy in respect of the same.

We are of opinion that the defence of a *bona fide* purchaser has been maintained, and upon both of the grounds indicated, the right of appellee to the relief sought should have been denied as against appellant, Knobloch, and the bill dismissed as to him.

For the error of the court in this regard, the decree, in so far as it affects the appellant, Knobloch, will be reversed, and the cause remanded to the circuit court of St. Clair county, with instructions to enter a decree in conformity with this opinion, dismissing the bill as to said appellant.

*Judgment reversed.*